**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | |
|---|---|
| JOHN DOE, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>FAIRFAX COUNTY SCHOOL BOARD, *et al.*,<br><br>Defendants. | Civil Action No. 1:26-cv-01541-AJT-IDD |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS**

Sona Rewari (VSB No. 47327)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
(202) 955-1974
(703) 918-4018 (facsimile)
srewari@hunton.com

David M. Parker (VSB No. 85619)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
(804) 788-8718
(804) 788-8218 (facsimile)
dparker@hunton.com

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 1

I. This Court clearly must dismiss certain claims against certain Defendants. ..... 1

A. Plaintiffs do not contest that their official-capacity claims and Title VI claims against the individual Defendants must be dismissed. ..... 1

B. Plaintiffs' constitutional claims against Superintendent Reid and Principal Mukai fail as a matter of law. ..... 2

C. Plaintiffs fail to state a constitutional claim against the School Board. ..... 4

II. Plaintiffs fail to state an Equal Protection claim against any Defendant. ..... 6

A. Plaintiffs fail to allege disparate treatment by any Defendant. ..... 7

1. Plaintiffs fail to allege disparate treatment by any individual Defendant. ..... 7

2. Plaintiffs fail to allege disparate treatment by the School Board. ..... 8

a. Plaintiffs are not similarly situated to the CHS students ..... 8

b. Plaintiffs are not similarly situated to the SGA students. ..... 9

B. Plaintiffs fail to allege discriminatory intent by any Defendant. ..... 10

III. Plaintiffs fail to state a Title VI claim. ..... 11

IV. Plaintiffs fail to state a First Amendment claim. ..... 12

A. Plaintiffs' discipline satisfied *Tinker*. ..... 12

B. Plaintiffs' discipline did not violate any independent prohibition against + viewpoint discrimination. ..... 14

V. Plaintiffs fail to state a procedural due process claim. ..... 15

A. Plaintiffs' property-interest claim fails. ..... 15

B. Plaintiffs' "stigma-plus" claim also fails. ..... 17

VI. AP Fawsett is entitled to Qualified Immunity. ..... 19

CONCLUSION ..... 20

CERTIFICATE OF SERVICE ..... 21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Sandoval*,
532 U.S. 275 (2001) .......... 11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 1, 2, 3, 18

*Awrey v. Gilbertson*,
833 F. Supp. 2d 738 (E.D. Mich. 2011) .......... 18

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*,
520 U.S. 397 (1997) .......... 5

*Berger v. Battaglia*,
779 F.2d 992 (4th Cir. 1985) .......... 14

*Castorina v. Madison Cnty. Sch. Bd.*,
246 F.3d 536 (6th Cir. 2001) .......... 15

*City of St. Louis v. Praprotnik*,
485 U.S. 112 (1988) .......... 4

*Cole By & Through Cole v. Newton Special Mun. Separate Sch. Dist.*,
676 F. Supp. 749 (S.D. Miss. 1987) .......... 16

*Cosby v. S.C. Prob., Parole & Pardon Servs.*,
93 F.4th 707 (4th Cir. 2024) .......... 6

*Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.*,
158 F.4th 732 (6th Cir. 2025) .......... 15

*Franklin v. City of Charlotte*,
64 F.4th 519 (4th Cir. 2023) .......... 5

*Goss v. Lopez*,
419 U.S. 565 (1975) .......... 15, 16, 17

*Hardwick v. Heyward*,
711 F.3d 426 (4th Cir. 2013) .......... 9, 12, 15

*Katti v. Arden*,
161 F.4th 217 (4th Cir. 2025) .......... Passim

*Laney v. Farley*,
501 F.3d 577 (6th Cir. 2007) .......... 16

*Langford v. Joyner*,
62 F.4th 122 (4th Cir. 2023) .......... 3

*Leroy v. Livingston Manor Cent. Sch. Dist.*,
158 F.4th 414 (2d Cir. 2025) ........ 13

*Mahanoy Area Sch. Dist. v. B.L.*,
594 U.S. 180 (2021) ........ 9, 12

*Mason v. Bd. of Educ.*,
No. CIV.A. WMN-10-3143, 2011 WL 89998 (D. Md. Jan. 11, 2011) ........ 16

*Monell v. Department of Social Services of City of New York*,
436 U.S. 658 (1978) ........ 1, 4

*Morris v. City of Danville*,
744 F.2d 1041 (4th Cir. 1984) ........ 17

*Morrison v. Garraghty*,
239 F.3d 648 (4th Cir. 2001) ........ 6

*Mullenix v. Luna*,
577 U.S. 7 (2015) ........ 19, 20

*Nordlinger v. Hahn*,
505 U.S. 1 (1992) ........ 6

*Patrick v. Success Acad. Charter Schs., Inc.*,
354 F. Supp. 3d 185 (E.D.N.Y. 2018) ........ 16

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979) ........ 10

*Peters v. Jenney*,
327 F.3d 307 (4th Cir. 2003) ........ 11, 12

*Regents of Univ. of Cal. v. Bakke*,
438 U.S. 265 (1978) ........ 12

*Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*,
671 F. Supp. 3d 555 (E.D. Pa. 2023) ........ 14

*Sciolino v. City of Newport News, Va.*,
480 F.3d 642 (4th Cir. 2007) ........ 19

*Starbuck v. Williamsburg James City Cnty. Sch. Bd.*,
28 F.4th 529 (4th Cir. 2022) ........ 4, 5

*Sylvia Dev. Corp. v. Calvert Cnty.*,
48 F.3d 810 (4th Cir. 1995) ........ 11

*Tinker v. Des Moines Independent Community School Dist*rict,
393 U.S. 503 (1969) ........ 12

*Velez v. Levy*,
401 F.3d 75 (2d Cir. 2005) ........ 18

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........ 10

*Wise v. Pea Ridge Sch. Dist.*,
855 F.2d 560 (8th Cir. 1988) ........................................ 16

*Wright v. Collins*,
766 F.2d 841 (4th Cir. 1985) ........................................ 6

## INTRODUCTION

Plaintiffs' Opposition confirms that their claims all fail as a matter of law. At the outset, Plaintiffs make it easy for this Court to dismiss certain claims against certain Defendants. They do not dispute that their official-capacity claims and Title VI claims against the individual Defendants must be dismissed. And their constitutional claims against Superintendent Reid and Principal Mukai do not plausibly allege that either official, "through the official's own individual actions," violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Instead, Plaintiffs rest on the same conclusory, formulaic assertions foreclosed by *Iqbal*. Finally, their claims against the School Board do not clear *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978), because they allege neither action by a final policymaker nor any causal link between their discipline and the denial of their personnel complaints against school administrators.

Each claim also fails entirely. Plaintiffs do not plausibly allege disparate treatment or discriminatory intent, so their Equal Protection and Title VI claims collapse. Their First Amendment claim fails given the substantial disruption acknowledged by their own allegations. And their procedural due-process theories are legally and factually deficient. Even if any claim surpasses facial implausibility, Associate Principal ("AP") Fawsett—the official who conducted the investigation of Plaintiffs' conduct and issued their discipline—is entitled to qualified immunity. The Court should dismiss the complaint in its entirety.

## ARGUMENT

### I. This Court clearly must dismiss certain claims against certain Defendants.

#### A. Plaintiffs do not contest that their official-capacity claims and Title VI claims against the individual Defendants must be dismissed.

Black letter law requires dismissal of the official capacity claims against the individual Defendants, and the Title VI claims against every Defendant except the School Board. Mot. 25–

26. Plaintiffs do not dispute this, and therefore, the Court should dismiss those claims against Superintendent Reid, Principal Mukai, and AP Fawsett.

**B. Plaintiffs' constitutional claims against Superintendent Reid and Principal Mukai fail as a matter of law.**

When suing officials in their individual capacities, "a plaintiff must plead that each Government-official defendant" violated the Constitution "through the official's own individual actions." *Iqbal*, 556 U.S. at 676. "The standard articulated in *Twombly* and *Iqbal* applies to *each* claim against *each* defendant in a civil action." *Katti v. Arden*, 161 F.4th 217, 224 (4th Cir. 2025) (emphasis in original). This general rule "bears special emphasis" in a § 1983 suit "where 'vicarious liability is inapplicable' so the focus is on each defendant's 'own individual actions.'" *Id.* (quoting *Iqbal*, 556 U.S. at 676).

Plaintiffs argue that Principal Mukai is liable because they allege that: (1) as principal, he is "responsible for enforcing student discipline;" (2) his October 27 email deemed Plaintiffs "antisemitic;" and (3) "Defendants pre-determined that Plaintiffs had violated policy." Opp. 26 (citing Compl. ¶ 198). Plaintiffs also argue that their allegation that Superintendent Reid "reviewed and approved the disciplinary actions and speech restrictions" is a sufficient basis for her individual liability. *Id.* 26–27 (citing Compl. ¶¶ 136–39).

These allegations are plainly inadequate. Plaintiffs allege no facts showing that Principal Mukai *did* "enforce student discipline" against them. To the contrary, they allege that AP Fawsett told one Plaintiff's father that "the disciplinary decision was hers to make," that she conducted the investigation, and that she issued their suspension letters. Compl. ¶¶ 97–105, 120–21. A school principal's abstract authority to enforce student discipline is not a sufficient basis for his liability under § 1983. *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable … under a theory of *respondeat superior*."). The allegation that Principal Mukai's October 27 email called

Plaintiffs "antisemitic" is not only insufficient to state a claim under the theories alleged (Equal Protection Clause, First Amendment, or the Due Process Clause), but it is also belied by the email itself, which contains no reference to Plaintiffs, let alone calling them "antisemitic." *See* Mot., Ex. 2. Lastly, the allegation that "Defendants predetermined that Plaintiffs had violated policy" is inadequate because Plaintiffs do not allege any involvement by Principal Mukai in the challenged discipline, and therefore, any alleged prejudgment by him could not have violated any of their constitutional rights. Moreover, this "generalized, conclusory, and collective allegation[]" does not satisfy Plaintiffs' burden to plausibly allege that Principal Mukai "through [his] own individual actions, has violated the Constitution." *Iqbal,* 556 U.S. at 676; *see Langford v. Joyner*, 62 F.4th 122, 124–26 (4th Cir. 2023) (affirming dismissal of complaint against multiple defendants that failed to allege how each defendant violated the plaintiff's constitutional rights).

With respect to Superintendent Reid, Plaintiffs make no effort to distinguish their allegation that she "reviewed and approved the disciplinary actions and speech restrictions" from the threadbare allegations in *Iqbal* or any of the other cases cited in Defendants' Brief. *See* Mot. 27. Nor could they. In *Iqbal*, the plaintiff alleged that the Attorney General was the "principal architect" of an invidious policy under which his civil rights were violated, and the Director of the FBI was "instrumental" in adopting and executing the policy. 556 U.S. at 680–81. He also alleged that defendant "'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement." *Id.* The Supreme Court found that these were all just "bare assertions" that were "formulaic," "conclusory[,] and not entitled to be assumed true." *Id.* Plaintiffs' single conclusory allegation against Superintendent Reid says even less.[1]

[1] Even further, this allegation against Superintendent Reid is belied by the exhibit Plaintiffs attached to their Opposition, which shows that she was *not* personally involved in even the "review" of this personnel complaint against Principal Mukai and AP Fawsett. *See* Opp., Ex. A,

Because Plaintiffs have failed to plausibly allege that Principal Mukai and Superintendent Reid each violated the Equal Protection Clause, the First Amendment, or the Due Process clause through their own individual actions, the individual-capacity claims against them should be dismissed. *Katti*, 161 F.4th at 224 (plaintiffs failed to state a claim where the court could not "reasonably infer" that each defendant "by their own individual actions" violated the constitution).

**C. Plaintiffs fail to state a constitutional claim against the School Board.**

Plaintiffs' constitutional claims against the School Board fail to satisfy *Monell*, 436 U.S. at 691. Mot. 29–30. Here, Plaintiffs argue that their allegations show municipal liability under a "ratification" theory. Opp. 27 (citing *Starbuck v. Williamsburg James City Cnty. Sch. Bd.*, 28 F.4th 529, 534 (4th Cir. 2022)). But that argument fails for two independent reasons.

First, this ratification theory still requires action by a final policymaker, which Plaintiffs do not allege. Liability arises "when a final policymaker has the authority to review the decision of a subordinate," and such final policymaker gives "its approval of that allegedly unconstitutional decision." *Starbuck*, 28 F.4th at 534 (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

In *Starbuck*, the plaintiff-student who was suspended by his assistant principal alleged that he "submitted a written notice of appeal to the School Board" as a body, which "found the suspension was proper." *Id.* at 532. Here, however, Plaintiffs do *not* allege that they appealed AP Fawsett's disciplinary decisions to the School Board. And they cannot and do not allege that those disciplinary decisions were reviewed or decided by the School Board as a body—i.e., the policymakers. They allege that they made a complaint against the Thomas Jefferson High School for Science and Technology ("TJHSST") administrators alleging that these employees had acted

---

at PageID#254 (email from Superintendent Reid referring to "staff who have been reviewing this situation and will both address the concerns raised and respond as appropriate").

improperly. Compl. ¶¶ 136–39. That personnel complaint, by their allegation, was resolved by "FCPS" as an institution with a letter in February 2026, "finding no wrongdoing by TJHSST administrators" and stating that "the administration's actions were consistent with FCPS regulations." *Id.*

Second, Plaintiffs' ratification theory also fails because they have not alleged that the resolution of this personnel complaint against TJHSST administrators was "the moving force" behind their alleged constitutional injuries. *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997). This is a "rigorous standard" that requires the plaintiff "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.* This link is not established by the mere fact that a final policymaker reviewed an employee's actions for compliance with policy after the fact. In *Franklin v. City of Charlotte*, for example, the plaintiff alleged a city had ratified its officer's fatal shooting of her decedent because the City Manager who was undisputedly "the final decisionmaker in the review of use of force complaints" had affirmed a review board's determination that the officer's actions complied with law and departmental policy. 64 F.4th 519, 536 (4th Cir. 2023). The Fourth Circuit found the City Manager's *ex post facto* approval of an officer's use of deadly force could not "possibly have caused the constitutional violation." *Id.* at 536–37. The injury was the use of deadly force, which could not have been undone by the review.[2]

Like the plaintiff in *Franklin,* Plaintiffs here do not allege any affirmative causal link between their constitutional injuries—their alleged discriminatory discipline, denial of due

---

[2] By contrast, the *Starbuck* plaintiff had appealed his discipline to his school board which approved it, and he alleged that "only because the School Board upheld the suspension does it remain on his permanent record." 28 F.4th at 535. The Fourth Circuit thus found that he had adequately alleged that his school board's disposition of his appeal "constitute[d] the moving force behind the asserted constitutional violation — the alleged punishment of protected speech." *Id.*

process, and discipline of protected speech—and the alleged ratification: FCPS's finding of "no wrongdoing by TJHSST administrators." This defect is an independently sufficient ground for dismissal of the constitutional claims against the School Board.

## II. Plaintiffs fail to state an Equal Protection claim against any Defendant.

The Equal Protection Clause prohibits "governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *see Katti*, 161 F.4th at 226. Plaintiffs must plausibly allege that (1) they have "been treated differently from others with whom [they are] similarly situated"; and (2) "the unequal treatment was the result of intentional or purposeful discrimination" based on race, religion, or national origin. *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Plaintiffs have plausibly alleged neither here. Mot. 9–17.

Plaintiffs attempt to meet this burden by treating all Defendants as a collective. Opp. 12–19. But "[a]llegations against a common employer cannot substitute for allegations of 'personal involvement' by the individual defendants." *Katti,* 161 F.4th at 224 (citing *Wright v. Collins,* 766 F.2d 841, 850 (4th Cir. 1985)). "Nor can alleged conduct by one individual defendant be attributed to another." *Id.* Disparate treatment claims against an institutional defendant cannot rely on comparators with different decisionmakers. *See, e.g., Cosby v. S.C. Prob., Parole & Pardon Servs*., 93 F.4th 707, 716 (4th Cir. 2024) (plaintiff's failure to show "that the supervisor or supervisors that made the decision to investigate her also made the decision not to investigate" her purported comparator was "independently fatal" to her disparate treatment claim).

### A. Plaintiffs fail to allege disparate treatment by any Defendant.

#### 1. Plaintiffs fail to allege disparate treatment by any individual Defendant.

Plaintiffs do not plausibly allege that any of AP Fawsett, Principal Mukai, or Superintendent Reid treated them differently from another similarly situated student.

Plaintiffs argue that the Chantilly High School ("CHS") students are a "compelling" comparator. Opp. 14. But they do not contest that AP Fawsett and Principal Mukai had no disciplinary authority over the CHS students. *See* Mot. 11. So Plaintiffs cannot allege that either Defendant treated them differently than the CHS students. And Plaintiffs allege no facts showing that Superintendent Reid was involved in any disciplinary decision regarding either Plaintiffs or the CHS students (or, indeed, that she even saw the CHS students' video).

Plaintiffs' allegation regarding the students in the TJHSST Student Government Association ("SGA") also does not suffice to support an Equal Protection claim against any individual Defendant. Plaintiffs do not allege that any of AP Fawsett, Principal Mukai, or Superintendent Reid saw or was aware of the SGA video, or that any of them were involved in any decision not to discipline the SGA students. So Plaintiffs cannot allege that any individual Defendant treated them differently than the SGA students. *Katti*, 161 F.4th at 226–27 (holding that plaintiffs failed to allege a constitutional claim "[w]ithout an allegation that *these* defendants were involved" with the treatment of alleged comparators).

Because Plaintiffs fail to plausibly allege that any individual Defendant treated them less favorably than someone similar to them "in all relevant respects," their Equal Protection claim against AP Fawsett, Principal Mukai, and Superintendent Reid fails as a matter of law.

### 2. Plaintiffs fail to allege disparate treatment by the School Board.

Leaving aside that Plaintiffs fail to allege municipal liability under *Monell* (*see* Section I.C *supra*), they do not plausibly allege that the School Board treated them differently from another similarly situated student because of their race, national origin, or religion.

#### a. Plaintiffs are not similarly situated to the CHS students.

Plaintiffs insist that they were treated differently from the CHS students, but they fail to refute the most obvious distinction: the CHS students were governed by different decisionmakers. They argue that AP Fawsett's lack of authority over the CHS students is not fatal because their complaint alleges that "Superintendent Reid and the FCPS School Board reviewed and ratified the disciplinary conduct imposed by TJHSST." Opp. 15. But that argument is doubly flawed. First, as discussed in Section I.B above, that conclusory allegation is not supported by any facts. Second, even were the Court to credit it, that allegation still does not show differential treatment: Plaintiffs do not allege that Superintendent Reid or the School Board made, "reviewed," or "ratified" a decision to *not* discipline the CHS students.

Plaintiffs also fail to rebut the other reasons given in Defendants' Brief why the CHS students are not proper comparators. Mot. 10–13.

First, Plaintiffs do not dispute that they have not alleged the race, religion, or national origins of any CHS student. They instead assert that these protected statuses can be inferred from the name of their club, the Indian Students' Association. Opp. 16. But Plaintiffs do not, and cannot, allege that membership in this school-sponsored club is limited to students of particular races, religions, or national origins.[3]

---

[3] A school-sponsored *could not* impose such a limitation without running afoul of the Equal Protection clause or Title VI. Plaintiffs' own club—the MSA—by their own allegation is open to "students of all faiths," and "inclusive" and "diverse." Compl. ¶ 25.

Second, Plaintiffs argue that it makes no difference that the CHS students did not film their video during school hours and in the school, as Plaintiffs did, because students can still be punished for off-campus speech. Opp. 15. But whether student speech occurred in the school environment is highly relevant to a school's ability to regulate speech. As the Supreme Court explained, "special First Amendment leeway" decreases where speech occurs outside the supervision of the school. *See Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 188 (2021).

Third, Plaintiffs argue that it does not matter that the CHS students' video did not use the same props, symbols, and imagery that evoked the October 7 attack on Israel or the ongoing war in Gaza, asserting that they intended these elements merely as "expression[s] of faith and national origin." Opp. 14. But Plaintiffs' "intent" is "irrelevant." *Hardwick v. Heyward*, 711 F.3d 426, 439–40 (4th Cir. 2013). *See also* Opp. 10 (acknowledging that "intent is not dispositive under *Hardwick*"). Regardless, the keffiyehs in Plaintiffs' video were used to hood the "victims," not worn as clothing. Mot., Ex. 1 at 0:00:09–11. Further, the map of modern-day Israel overlaid with the flag of Palestine—which their suspension letters noted is "widely viewed" as calling for the elimination of Israel—was not taken as conveying a religious view or a national origin.

Finally, Plaintiffs argue that it does not matter that the CHS students' video did not generate the same outcry of complaints and objections as theirs. Opp. 14. But that is incorrect. As Plaintiffs assert elsewhere in their Opposition, a school's ability to regulate student speech is materially dependent on the speech's impact on the school. *See id.* at 9–10. The absence of any allegation that the CHS video created any disruption means those students cannot be similarly situated in "all relevant respects." *Katti*, 161 F.4th at 226.

**b. Plaintiffs are not similarly situated to the SGA students.**

Plaintiffs also are not similarly situated to the TJHSST SGA students in all relevant respects. They argue only that the content of the SGA students' video was "comparable" to theirs

because it had "same quality of cartoonish 'violent' imagery." Opp. 16. But that video did not mock a kidnapping or murder, and did not evoke the October 7 attack on Israel or the war in Gaza. Indeed, they do not allege that the video received any complaints or was seen by any school official. Plaintiffs also have not alleged any fact that would allow the Court to reasonably infer those students' races, religions, or national origins. Plaintiffs have not plausibly alleged that the SGA students were similarly situated to them "in all relevant respects."

**B. Plaintiffs fail to allege discriminatory intent by any Defendant.**

Even if Plaintiffs had alleged similarly situated comparators (and they did not), they fail to plausibly allege that any Defendant's actions were motivated by an "invidious discriminatory purpose." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

Plaintiffs argue that "the sequence of events and contemporaneous statements made by Defendants" show a discriminatory purpose. Opp. 17. But none of the events or contemporaneous statements they cite plausibly support such an inference. Plaintiffs argue that AP Fawsett allegedly told John Doe's father "she was just looking for 'the proper code violation.'" Compl. ¶ 103. But nothing in that statement suggests that AP Fawsett acted "at least in part 'because of,'" Plaintiffs' religion, race, or national origin. *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). Plaintiffs also argue that Principal Mukai allegedly believed that Richard Roe made certain social media posts even after police stated they were doctored. But Plaintiffs do not allege that this belief had any impact on their discipline. And regardless, Plaintiffs have not plausibly alleged the belief was based on Roe's race, religion, or national origin.

Plaintiffs also argue that "Defendants adopted the discriminatory intent of others." Opp. 17–18. But they acknowledge that this theory requires that (a) the public is "overwhelmingly opposed" to the plaintiffs "for a distinct discriminatory reason," and (b) the decisionmaker was "clearly swayed by that public opposition, fully aware of its basis in discrimination and prejudice."

Opp. 18 (quoting *Sylvia Dev. Corp. v. Calvert Cnty.*, 48 F.3d 810, 824 (4th Cir. 1995)). They fail to show that these requirements are met here.

Plaintiffs argue that the community's objections "focused entirely on the ethnic and religious expressions of the students," but that gloss is wholly unsupported by the Complaint. Opp. 18. The Complaint itself quotes numerous comments condemning the video as glorifying or promoting violence and as evoking the October 7 attack on Israel and the war in Gaza, with no mention of the ethnicities or religions of the students in the video. Compl. ¶¶ 82, 84, 92–94, 122–24. It also alleges that a TJHSST parent complained that the video was "incredibly offensive and promot[ing] violence" *id*. ¶ 90; the JCRC condemned the video as "cruel" and "horrif[ying]," *id.* ¶¶ 92–93; and a JCRC representative expressed her concern that one student in the video was wearing "a 'map of Israel' with Palestine colors on it," *id.* ¶ 94. The Complaint recounts two "hateful Islamophobic and anti-Arab comments" on the X social media platform, but that is insufficient to plausibly suggest that others' reactions to Plaintiffs' video were "overwhelmingly" based on a "distinct discriminatory reason." *Sylvia*, 48 F.3d at 824.

Plaintiffs make no attempt to meet the second element—to show that AP Fawsett *knew* that the community's reaction had an "overwhelming[]" "basis in discrimination and prejudice," and that her decision was based on that. *Id*.

Plaintiffs do not plausibly allege that any Defendant treated them differently because of their races, national origins, or religion. This is independent grounds for dismissal of their Equal Protection claim against each Defendant.

## III. Plaintiffs fail to state a Title VI claim.

Like the Equal Protection clause, Title VI "prohibits only intentional discrimination, not 'disparate impact' practices." *Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)). Indeed, Title VI "proscribes only those racial

classifications that would violate the Equal Protection Clause or the Fifth Amendment." *Id.* (quoting *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265 (1978)). As discussed above, their Equal Protection claims fail to allege any such intentional discrimination. Their Title VI claim therefore also fails as a matter of law.

## IV. Plaintiffs fail to state a First Amendment claim.

Plaintiffs fail to state a First Amendment claim because their discipline was justified under *Tinker v. Des Moines Independent Community School Dist*rict, 393 U.S. 503 (1969). Mot. 17–19. Plaintiffs resist that conclusion on two grounds, but neither succeeds. Opp. 8. The discipline satisfied *Tinker*, and it did not violate any "independent prohibition against viewpoint discrimination." *Id.*

### A. Plaintiffs' discipline satisfied *Tinker*.

Schools enjoy "special leeway" to regulate student speech that occurs under their supervision. Mot. 17 (quoting *Mahanoy*, 594 U.S. at 188). Specifically, schools can discipline student speech that would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school" or "collid[e] with the rights of others." *Id.* (quoting *Tinker*, 393 U.S. at 513). And a school need only "reasonably forecast" that such disruption will occur. *Id.* at 18 (quoting *Hardwick*, 711 F.3d at 439–40).

Here, Plaintiffs' speech had already caused substantial disruption when they were disciplined. Plaintiffs concede that their video had already gone viral and generated "hysteria" that "quickly made its way to the FCPS community." Mot. 18–19 (quoting Compl. ¶ 90). They do not dispute that many people—including FCPS parents—saw the video as "promot[ing] violence." *Id.* (quoting Compl. ¶ 90). And they do not dispute that this left "[s]tudents and staff of different faiths" feeling "fearful and unsafe at school," *id.* at 19 (quoting Ex. 3 (Suspension Notice) at 1). That is more than enough to justify discipline under *Tinker*.

Plaintiffs' responses are unpersuasive. First, they assert that the video caused no disruption *at* school, only outside of it. Opp. 7–9. But as just explained, Plaintiffs themselves admit that what *started* as outside disruption "quickly made its way to the FCPS community"—making students and staff "fearful and unsafe *at school*." Contrary to Plaintiffs' assertion, that constitutes an "interference with . . . other students' education." Opp. 11. Students cannot learn while fearing for their safety, as Plaintiffs' own authority confirms. *Leroy v. Livingston Manor Cent. Sch. Dist.*, 158 F.4th 414, 427 (2d Cir. 2025) (cited at Opp. 10) ("Schools can and must protect the school community from threats … that make students fear for their safety"); *see also id.* ("[Schools have a] critical responsibility to provide students the opportunity to learn without fear.") (citation omitted). In addition, the outside disruption indirectly supports the discipline. Given the alleged "hysteria" that was "build[ing] momentum," Compl. ¶ 92—including outrage voiced by multiple online influencers, parents, and a local community group, *id.* ¶ 90—AP Fawsett could reasonably forecast that disruption would spill into the school. Indeed, it already had.

Second, Plaintiffs argue that there were no "past in-school disruptions." Opp. 10. But that misses the point: Plaintiffs' video was itself causing present disruption at the school. Even if the map sweatshirt was not disruptive before, Opp. 8, 10, it became disruptive the moment it tied Plaintiffs' mock-kidnapping video—intentionally or not—to the October 7 attack on Israel, *see* Mot. 19.[4] Given the centrality of the sweatshirt to the video's impact, *see* Compl. ¶ 92, AP Fawsett could reasonably forecast that its continued presence in the school would be disruptive.

Third, Plaintiffs were not impermissibly disciplined because of the "audience's hostile reaction," or through a "heckler's veto." Opp. 7–8. As Plaintiffs' own cited authorities

[4] *See also* Compl. ¶ 94; WaPo Article at 2 (reporting JCRC's statement that the "pro-Palestinian shirt" made it "hard to see [the video] as anything other than a direct reference to the Israel-Gaza conflict").

acknowledge, *Tinker* supplies a "school setting exception" to the "heckler's veto" doctrine. *Satanic Temple, Inc. v. Saucon Valley Sch. Dist.*, 671 F. Supp. 3d 555, 577 n.2 (E.D. Pa. 2023) (cited at Opp. 10). That is why Plaintiffs' principal authority for their "heckler's veto" argument did not involve a school at all. *See Berger v. Battaglia,* 779 F.2d 992, 1001 (4th Cir. 1985) (addressing discipline of a city police officer). That is not to say every disruptive reaction can justify school-based discipline. But here, the reaction was that students felt "fearful and unsafe at school," Ex. 3 at 1, and that "emotive impact," Opp. 11, caused legitimate disruption that justifies the discipline.

Finally, that the disruption from Plaintiffs' mock-kidnapping video was "amplified" by outside actors does not change the analysis. Opp. 10. It was foreseeable that Plaintiffs' video would be perceived as parodying the October 7 attack, particularly given the symbols Plaintiffs displayed. And it was equally foreseeable that this perception would generate strong reactions. These reactions do not insulate Plaintiffs from discipline for their expressive choices.

**B. Plaintiffs' discipline did not violate any independent prohibition against viewpoint discrimination.**

Plaintiffs also argue that even if their discipline would otherwise satisfy *Tinker*, it separately violates an "independent prohibition against viewpoint discrimination." Opp. 8. That is wrong for two independent reasons.

First, there was no viewpoint discrimination here. Plaintiffs were not disciplined for a "self-expressive" and "innocuous" political viewpoint about the conflict between Israel and Palestine. Opp. 11. They were disciplined for filming a mock-kidnapping. This video was reasonably interpreted "as menacing, hostile, and intimidating toward members of the school community." Ex. 3 at 1. It "created an environment hostile to the rights of Jewish students and staff," and caused "students and staff of different faiths" to "feel fearful and unsafe at school." *Id.*

Plaintiffs may not have intended that effect; but again, their "intent" is "irrelevant." *Hardwick*, 711 F.3d at 439. They now seem to concede as much. *See* Opp. 10 (acknowledging that "intent is not dispositive under *Hardwick*").

Second, Plaintiffs are also wrong on the law. Opp. 8. They say courts "disagree" on whether *Tinker* prohibits viewpoint discrimination, citing a single Sixth Circuit decision that purportedly takes their side. *Id.* (citing *Castorina v. Madison Cnty. Sch. Bd.*, 246 F.3d 536, 544 (6th Cir. 2001)). But the Sixth Circuit has since made clear, sitting en banc, that the question remains open. *See Defending Educ. v. Olentangy Loc. Sch. Dist. Bd. of Educ.,* 158 F.4th 732, 756–57 (6th Cir. 2025) (en banc) (acknowledging that its prior precedent "might extend [a] categorical viewpoint-discrimination ban to the student expression governed by *Tinker*," but that it "need not resolve that question" and would instead "save [it] for another day"). Every circuit to answer the question, by contrast, has held that schools *can* regulate disruptive speech even if that means suppressing a specific viewpoint. *See, e.g., Hardwick*, 711 F.3d at 443 (citing decisions from the Fifth, Eighth, and Ninth Circuits). This Court should not break from every circuit to have ruled on this question—and it need not, because there was no viewpoint discrimination here.

## V. Plaintiffs fail to state a procedural due process claim.

Plaintiffs' procedural Due Process claim fails as well. Mot. 19–25. Plaintiffs press two versions: a property-interest claim and a "stigma-plus" claim. *Id*. Neither is adequately pleaded.

### A. Plaintiffs' property-interest claim fails.

Plaintiffs' property-interest claim fails for two independent reasons.

First, Plaintiffs were not deprived of their property interest in a public education. Mot. 20–23. As Defendants explained, Plaintiffs' six-day in-school suspension was not a "total exclusion from the educational process," *Goss v. Lopez*, 419 U.S. 565, 576 (1975), because, among other things, they continued to come to school and continued to receive "academic assignments," Mot.

20 (quoting Compl. ¶ 110). Plaintiffs now argue that they also received "one day out-of-school suspension," Opp. 19, when their parents allegedly "were called to take them home" on the first day of the investigation, Compl. ¶ 100. Even assuming this constituted an "out-of-school suspension," it does not provide Plaintiffs a plausible Due Process claim.

Plaintiffs cite *Goss* for the proposition that a "temporary suspension" of ten days or less could implicate a student's property interest. Opp. 20. But *Goss* was discussing *out* of school suspension. 419 U.S. at 575 (noting that students were "excluded from school").[5] Here, Plaintiffs received—at most—a single day of out-of-school suspension. Another of Plaintiffs' cases concerned a "long-term suspension" of "45 school days." *Patrick v. Success Acad. Charter Schs., Inc.*, 354 F. Supp. 3d 185, 198, 213 (E.D.N.Y. 2018). Neither decision speaks to the discipline at issue here. Plaintiffs' remaining authorities rest on dicta, and cannot carry their claim forward. *See Cole By & Through Cole v. Newton Special Mun. Separate Sch. Dist.*, 676 F. Supp. 749, 751 (S.D. Miss. 1987), *aff'd*, 853 F.2d 924 (5th Cir. 1988); *Laney,* 501 F.3d at 584.[6]

Second, even assuming deprivation of a property interest, Plaintiffs received all process they were due. Mot. 21. Under *Goss*, they were entitled, at most, to notice of the charges and the evidence against them, and an opportunity to explain their side. *Id.* Plaintiffs received that. *Id.*

Plaintiffs respond that they "did not receive adequate notice of all evidence against them," because they were not shown the "statements" of everyone who was offended or hurt by their

[5] *See also Laney v. Farley,* 501 F.3d 577, 582 (6th Cir. 2007) (reasoning that in-school suspensions are "unlike the out-of-school suspensions discussed in *Goss*").

[6] Plaintiffs' responses to Defendants' authorities fare no better. Opp. 21 n.8. They do not dispute *Mason*'s observation that "courts have consistently held that a plaintiff's in-school suspension would not implicate the requirements of due process." *Mason v. Bd. of Educ.*, No. CIV.A. WMN-10-3143, 2011 WL 89998, at *4 (D. Md. Jan. 11, 2011). Nor do they dispute that the Eighth Circuit refused to apply "the strictures of procedural due process" "in the context of a temporary in-school suspension." *Wise v. Pea Ridge Sch. Dist.,* 855 F.2d 560, 563 n.3 (8th Cir. 1988).

video. Opp. 24–25. But *Goss* does not entitle them to disclosure of every complaint, and certainly not the right to "cross-examine" the complainants. *See* Mot. 21 (quoting *Goss*, 419 U.S. at 583). Plaintiffs also claim that Colin Coe's sweatshirt should have been "brought to Plaintiffs' attention," Opp. 24–25, but that makes little sense. Plaintiffs knew why they were facing discipline for the video, and that the video featured the sweatshirt. The relevance of this sweatshirt should have come as no surprise.

Finally, Plaintiffs' claim that Defendants "prejudged" their guilt similarly falls flat. Opp. 25–26. As Plaintiffs concede, Opp. 25, school officials enjoy a "presumption of honesty and integrity," and overcoming it demands a "strong showing of bad faith or improper behavior," Mot. 21–22 (quoting cases). Taken as true, Plaintiffs' allegations fall short of this high bar. AP Fawsett's statement that she was "just looking for the proper code violation" is not a "strong showing" of "bad faith." Mot. 21–22. She said in the same breath that she would "look into the[] other videos and groups"—and she then investigated for three more days. Mot. 22. This type of "conditional decision" does not violate Due Process. *Id.* (quoting *Morris v. City of Danville*, 744 F.2d 1041, 1044 (4th Cir. 1984).

In any event, AP Fawsett's preliminary view was well-founded: she had already watched the video and heard Plaintiffs' accounts before she spoke. *See* Compl. ¶¶ 95–103. Due Process did not require her to "withhold judgment for just a moment longer" to afford Plaintiffs a more "meaningful" hearing. Opp. 25–26. The Constitution does not require "trial-type procedures" at school. Mot. 21 (quoting *Goss*, 419 U.S. at 583).[7]

**B. Plaintiffs' "stigma-plus" claim also fails.**

Plaintiffs also fail to state a "stigma-plus" claim for two independent reasons. Mot. 23–24.

[7] Plaintiffs also invoke Principal Mukai's alleged prejudgment, Opp. 25, but he was not involved in Plaintiffs' suspensions, *see supra* Section I.B.

First, Plaintiffs were required to request the "name-clearing hearing" they say was wrongfully withheld. *Id.* at 24. They now respond that this rule applies only in "employment cases," and only for "adults." Opp. 23 n.11. But no case recognizes those distinctions. The logic of the rule—that plaintiffs cannot complain about process they never requested—applies with equal force in the school setting. And it has been enforced there. *See Awrey v. Gilbertson*, 833 F. Supp. 2d 738, 742 (E.D. Mich. 2011).

Plaintiffs did not request this hearing. Mot. 24. It is not enough that one plaintiff's mother "attempted to speak with Defendant Mukai." Opp. 23. Nor does Plaintiffs' personnel complaint suffice, *id.*, which requested a meeting with Superintendent Reid to address "actions taken by TJHSST administrators" and Principal Mukai's "premature and biased comments." Ex. A at 1.[8] That complaint was not sent to any defendant responsible for any element of the alleged Due Process violation—Principal Mukai and AP Fawsett. And it did not request any hearing to clear Plaintiffs' names. Indeed, it did not identify or name any students.

Second, Plaintiffs have not alleged that any one defendant is responsible for all elements of the claim—the "stigma" and the "plus." Mot. 24–25. Plaintiffs say Defendants cited no "caselaw for this proposition," Opp. 24, but Defendants cited the fundamental principle that each defendant is liable only for his or her "own individual actions," Mot. 24 (quoting *Iqbal*, 556 U.S. at 676). Nor did *Velez* hold the "exact opposite." Opp. 24 (citing *Velez v. Levy*, 401 F.3d 75, 88–89 & n.12 (2d Cir. 2005)). As Defendants explained, *Velez* held that while plaintiffs can rely on the actions of multiple defendants to show "the existence of a liberty interest," they *cannot* rely on such actions to hold any one defendant "liable." Mot. 25 (quoting *Velez*, 401 F.3d at 89 n.12).

---

[8] The personnel complaint refers to the "superintendent's" statements, but presumably means Principal Mukai. Ex. A at 1. Additionally, Plaintiffs' exhibit is illegible due to an apparent defect, so Defendants have filed a corrected version as Exhibit A to this reply.

Defendants are not saying the "stigma" and "plus" must originate from the same "individual person within the sued entity." Opp. 24. Rather, Defendants are saying that the actions of one *defendant* cannot be attributed to another *defendant*. *See* Mot. 24–25; *see also Katti,* 161 F.4th at 224 (explaining that alleged conduct by one individual defendant cannot be attributed to another). Claims against entities are of course allowed; Plaintiffs just haven't pled one here. *See supra* Section I.C. And *Sciolino* is not to the contrary. Opp. 24 (citing *Sciolino v. City of Newport News, Va.*, 480 F.3d 642, 645 (4th Cir. 2007)). The defendants there were each responsible for both the "stigma" and the "plus." *See Sciolino*, 480 F.3d at 645 ("[Defendant] Chief of Police Dennis Mook, acting on behalf of the [defendant police] department, terminated Sciolino's employment by letter, accusing him of deliberately destroying city property . . . .").[9]

**VI. AP Fawsett is entitled to Qualified Immunity.**

Plaintiffs' constitutional claims against AP Fawsett all fail for reasons given above. *See supra* Sections II–IV.[10] But at a minimum, no violation was so "clearly established" that "every reasonable official would have understood" that the conduct was unconstitutional. Mot. 28 (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). Accordingly, even if a constitutional claim survives, Plaintiffs cannot recover damages from AP Fawsett. Mot. 27–29.

Plaintiffs' responses are unconvincing. On their Equal Protection claim, they assert only that it is "beyond debate" that "punishing students more harshly because of their race or religion violates Equal Protection." Opp. 29. But that frames the right at the highest "level of generality"—precisely what the Supreme Court has forbidden. Mot. 28 (quoting *Mullenix*, 577 U.S. at 11). The

[9] Plaintiffs also claim they "expressly allege[d] that Mukai and Reid played important roles in the decision to discipline Plaintiffs." Opp. 24. That is not true, as explained above. *See supra* Section I.B.

[10] As explained above, only AP Fawsett had any alleged involvement in Plaintiffs' discipline, and therefore she would be the only individual Defendant facing any constitutional claim that survives dismissal. *See supra* Sections II, III.

proper question is whether it was "clearly established" that disciplining students because their speech caused fear and outrage amounts to discrimination based on a protected trait. *See supra* Section II. The answer is no. *Id.*

Plaintiffs' argument on their First Amendment claim fares no better. Opp. 28–29. They argue it is "beyond debate" that AP Fawsett cannot satisfy *Tinker* by "relying solely on outside reaction to punish speech." *Id*. But AP Fawsett did not rely solely on outside reaction. *See supra* Section IV.A. As Plaintiffs concede, that reaction "quickly made its way to the FCPS community." Compl. ¶ 90. Within that community, the video was perceived as violent by FCPS parents, *id.*, and left students and staff feeling "fearful and unsafe at school," Ex. 3 at 1. If that doesn't satisfy *Tinker*, it at least does not fall clearly short. *Mullenix*, 577 U.S. at 11.

Finally, Plaintiffs summarily assert that their Due Process claims are "neither novel nor abstract." Opp. 29. But no case holds that a short suspension like theirs deprives a student of a property right, *see supra* Section V.A, or that process similar to what they received offends Due Process, *see id*. And on Plaintiffs' stigma-plus claim, they identify no case recognizing their purported exceptions for schools or children, *see supra* Section V.B, and none holding one defendant liable for another's stigmatizing statement, *see id.*

## CONCLUSION

For the reasons stated above and in Defendants' motion to dismiss, Defendants respectfully request that this Court dismiss Plaintiffs' claims in their entirety.

Dated: August 31, 2026

Respectfully submitted,

*/s/ Sona Rewari*
Sona Rewari (VSB No. 47327)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, DC 20037
(202) 955-1974
(703) 918-4018 (facsimile)
srewari@hunton.com

David M. Parker (VSB No. 85619)
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA 23219-4074
(804) 788-8718
(804) 788-8218 (facsimile)
dparker@hunton.com

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 31st day of August, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to all counsel of record.

*/s/ Sona Rewari*
Sona Rewari